IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

ALICE PALMER        *

      Plaintiff,     *

v.                        *     CIVIL NO.: WDQ-04-323
JOANNE BARNHART,
COMMISSIONER OF THE
SOCIAL SECURITY        *
ADMINISTRATION
      Defendant.      *

*    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM OPINION AND ORDER

Alice Palmer sued Joanne Barnhart, Commissioner of the
Social Security Administration ("SSA"), for unlawful discrimination
and retaliation in violation of Title VII of the Civil Rights Act
of 1964 ("Title VII")[1] and the Age Discrimination in Employment Act
("ADEA")[2].   Pending is SSA's motion to dismiss or in the
alternative motion for summary judgment.   For the following
reasons, SSA's motion for summary judgment will be granted.

I.   BACKGROUND

Palmer, a 68-year old African-American woman, has been
employed by SSA for 37 years. *See* Complaint at ¶6(a); Plain. Opp.
Exh. A at 5, 6.   For the past 23 years, Palmer has held
labor/employee relations positions within SSA's Office of Labor-

---

[1] 42 U.S.C. §§ 2000e *et seq.* (2005).

[2] 29 U.S.C. 206 *et seq.* (2005).

Management and Employee Relations ("OLMER"). *See* Plain. Opp. Exh. A at 17.   In 1990 and 1998, Palmer was promoted to GS-11 Labor Relations Specialist ("LRS") and GS-12 LRS, respectively. *See id.* As an LRS, Palmer provided advice to management and handled arbitration hearings, and unfair labor practices cases. *See id.*

In January 2000, SSA posted a vacancy for a GS-13 LRS position (the "708 vacancy"). *See id. at 13.* Palmer applied for the position and was placed on the Best Qualified List (the "BQL"). *See* Plain. Opp. Exh. B.   The BQL consisted of five other candidates and all the candidates participated in a group interview. *See* Plain. Opp. Exh. A. at 7.   Jay Clary, an African-American male in his fifties, was the Selecting Official for the 708 position. *See* Def. Mot. Summ. J. Exh. 12.   Richard Matthews, an African-American male in his fifties, and Laurie Watkins, a Caucasian woman in her forties, provided informal input for the selection. *See* Def. Mot. Summ. J. Exh. 9 at 103-105, 171. Shortly after the group interview, Clary selected Robin Lurz, a 45 year-old Caucasian woman. *See* Plain. Opp. Exh. B.   In August 2000, Palmer filed a discrimination complaint with SSA's Equal Employment Opportunity Office ("EEO")because she believed that Lurz was selected because of her race and age. *See* Plain. Opp. Exh. A at 1, 2.

In January 2001, SSA advertised two GS-13 positions under Vacancy No. A-772 (the "772 vacancy"). *See* Plain. Opp. Exh. B at 39.   Palmer applied and again was placed on the BQL. *See* Plain.

2

Opp. Exh. N.  Watkins was the Selecting Official for this position. *See id.*  After a group interview, Watkins selected William Smith, a 47-year old Caucasian male and Selena Gibson, an African-American female in her fifties.  *See* Def. Mot. Summ. J. Exh. 9 at 41-42, 97-98.  As a result, Palmer amended her complaint alleging that SSA's failure to promote her was discriminatory and in retaliation for filing her initial EEO complaint.[3]  *See id.*  Palmer also claimed that after filing her EEO complaint, her workload was reduced.  *See id.*

After an administrative hearing, the Equal Employment Opportunity Commission ("EEOC") found in favor of SSA.  *See* Def. Mot. Summ. J. Exh. 10.  Palmer unsuccessfully appealed the EEOC's decision and on February 6, 2004, Palmer initiated this suit.

## II. LEGAL DISCUSSION

A.   Motion for Summary Judgment

1. Standard of Review

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is

_____

[3]Interestingly, the Plaintiff does not object to SSA's hiring of Gibson, an African-American female.

not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  Thus, "the judge must ask ... whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

The court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Electric Industrial Company v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the opponent must produce evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  The mere existence of a "scintilla" of evidence is not sufficient to preclude summary judgment. *Anderson*, 477 U.S. at 252.

2.   Discovery Request

Plaintiff argues that the Court should not treat Defendant's motion as a motion for summary judgment because she "has not had the opportunity for discovery."  Plaintiff filed a Rule 56(f) affidavit stating her need for discovery.  Rule 56(f) states that:

"should it appear from the affidavits of a party opposing the motion that the party cannot for

4

reasons stated present by affidavit facts essential
to justify the party's opposition, the court may
refuse the application for judgement or may order
continuance to permit affidavits to be obtained or
depositions to be taken or discovery to be had or
may make such other order as is just."

FED. R. CIV. P. 56(f).

In her 56(f) affidavit, the Plaintiff explains that she
needs to depose the alleged discriminating officials and several
agency employees who would be favorable to her. *See* Plain. Opp. Ex.
Q. She also states that she has not had the opportunity to secure
other information essential to rebut the Defendant's arguments. *See*
*id*. As the Plaintiff had ample opportunity to develop her case
during the EEOC hearing, summary judgment is not premature. *See*
*Khoury v. Meserve*, 268 F.Supp. 2d 600, 612 (D.Md. 2003) (where there
was a full administrative hearing on the merits, plaintiff could not
claim that there had not been time or opportunity to develop case).

3.   Title VII and ADEA

Palmer contends that SSA's actions were based upon her
race and age.

Title VII provides that it "shall be an unlawful
employment practice for an employer... to discriminate against any
individual with respect to her....terms, conditions, or privileges
of employment, because of such individual's race or sex...." 42

5

U.S.C. § 2000e-2(a).   Under the ADEA, it is unlawful for an employer...."to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to her compensation, terms, conditions or privileges of employment, because of such individual's age."   29 U.S.C. § 623 (a)(1).   The legal analysis for Title VII and the ADEA are identical.  *See EEOC v. Warfield-Rohr Casket Co.*, 364 F.3d 160, 163 (4th Cir. 2004).

> (A) Failure to Promote and Failure to Promote Based on Retaliation

Palmer alleges that SSA's failure to promote her for Vacancy 708 and Vacancy 772 constitutes race and age discrimination. Palmer also alleges that she was denied a promotion in retaliation for filing an EEO complaint.

To establish a prima facie case of failure to promote, Palmer must show: (1) she is a member of a protected class; (2) she applied for the position; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination.  *See Nguyen v. Dalton*, No. 95-2269, slip.op. at *8, 1996 U.S. App. LEXIS 21437, (4th Cir. Aug. 20, 1996)(*citing Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994)).

The elements of a retaliation claim are: (1) engagement in a protected activity; (2) adverse employment action by the employer; and (3) a causal connection between the protected activity

and the asserted adverse action. *Von Gunten v. Maryland*, 243 F.3d 858, 863 (4th Cir. 2001).

Even assuming that Palmer could establish a prima facie case, her discrimination claim must fail because she cannot rebut SSA's nondiscriminatory reasons for hiring either selectee.

(i)  Vacancy 708

SSA states that Palmer was not promoted because she was not the most qualified. Specifically, SSA explains that they were looking for a candidate with superior oral and written skills and the ability to handle complex issues. *See* Def. Mot. Summ. J. Exh. 9 at 105-106, 120.  SSA contends that Lurz demonstrated such skills through both her experience and interview performance. *See* Def. Mot. Summ. J. Exh. 9 at 120, 154-155; Exh. 12 at 4.

While not required, SSA believed that interviews would be an effective way of assessing the candidates beyond their applications. *See* Def. Mot. Summ. J. Exh. 9 at 108-110.  SSA described Lurz's interview responses as detailed, demonstrating that she was articulate, thoughtful, had good insight into her own strengths and weaknesses and a good feel for what the job required. *See id.* at 114.  In contrast, the Plaintiff's interview responses were unimpressive. *See id.* at 111-112.  Unlike the stronger candidates, Watkins recalled that Plaintiff's responses were simple and abbreviated. *See id.* at 111.  Clary recalled that Plaintiff's responses were "weak" and primarily based upon her seniority. *See id.* at 164-165. As a result, the Plaintiff did not convey how her experience and skills would make her the superior choice. *See id.*

7

at 111-112.

Although the Plaintiff disputes the specific interview responses alleged by the Defendant, she acknowledged that she did not "go all out". *See* Def. Mot. Summ. J. Exh. 12 at 50-51. A candidate's interview performance, however, is an important aspect of the evaluation process. *See Slate v. Commonwealth of Virginia*, No. 95-0398-R, 1996 U.S. Dist. LEXIS 22111, at *13-14 (W.D. Va. Jan. 13, 1996) (finding no discrimination where qualified plaintiff was not promoted due to poor interview performance).

Lurz formerly served on the Labor Relations staff in the Office of Central Operations[4] ("OCO"). *See* Def. Mot. Summ. J. Exh. 12 at 4; Exh. 19. Clary, Matthews and Watkins valued Lurz's OCO experience because it was "precisely the sort of work that would prepare a candidate for successful performance as an LRS." *See* Def. Mot. Summ. J. Exh. 9 at 154. In the OCO, Lurz became fluent in collective bargaining agreements, the arbitration and negotiation process and developed strong oral and written skills. *See id.* at 170. She also has a favorable reputation for her comprehension of labor relations work. *See id.* at 11-23, 169, 270.

Although Palmer received satisfactory performance ratings, management did not feel that she possessed the requisite skills for the position. *See* Def. Mot. Summ. J. Exh. 1. This is primarily because Palmer had experienced writing problems, lacked superior

---

[4]OCO houses an OLMER shadow staff that carries a significant labor relations workload. *See* Def. Mot. Summ. J. at 152-154, 248-249 and 262-263.

oral skills and did not gain the confidence of her superiors to receive challenging or complex assignments. *See* Def. Mot. Summ. J. Exh. 9 at 120, 168, 215, 240-241, 251-252.

Plaintiff has not presented any evidence that these reasons are pretextual.  Instead, Plaintiff relies upon two arguments in an attempt to satisfy her burden of showing pretext. She contends:(1) that she is more qualified than Lurz; and (2) that Lurz was not minimally qualified for the position.

Where a defendant produces proof that its reason for not promoting a plaintiff was that it selected the best qualified candidate for the position, the mere assertion by the plaintiff that she was more qualified for the position is insufficient. *Vaughan v. Metrahealth Cos., Inc.,* 145 F.3d 197, 202 (4th Cir. 1998).  The evidence shows that both Palmer and Lurz possessed significant experience. However, SSA concluded that Lurz's experience was more relevant to the position. *See* Def. Mot. Summ. J. Exh. 12 at 4.

Palmer contends that SSA's emphasis on Lurz's oral and written ability and OCO experience was misplaced.  Palmer argues that because Lurz lacked litigation experience and seniority, she was unqualified.  *See* Plain. Opp. Exh. B at 21-25, 169, 184-185, 271.  *See also* Def. Mot. Summ. J. Exh. 9 at 22.  SSA, however, contends that neither litigation experience nor seniority was a prerequisite for the position.  *See* Def. Mot. Summ. J. Exh. 9 at 106, 164; Exh. 12 at 3.  Moreover, Watkins explained that an OCO employee could be more qualified because a person performing at the

9

GS-12 LRS level does not necessarily possess superior writing or oral skills that are needed for the GS-13 LRS position. *See* Def. Mot. Summ. J. Exh. 9 at 120.  The Court, therefore, will not substitute its judgement for the employer. *See Evans v. Technologies Applications & Servs. Co.*, 875 F.Supp. 1115, 1120 (D.Md. 1995), *aff'd*, 80 F.3d 954 (1996) ("In a Title VII or ADEA case, a court should not act as a "super-personnel department" and undertake to determine whether a defendant's perceptions of an employee's qualifications are erroneous, without regard to the defendant's ability to assess the full dimension of its employees' qualifications and its ability to view its employees in a work environment.").

Palmer also argues that Lurz was unfairly placed on the BQL. Specifically, she alleges that Clary and Watkins coached her in drafting her application. *See* Plain. Opp. Exhs. F and O. She suggests that they liked Lurz more than the other candidates. Plaintiff, however, has not provided any evidence of any discriminatory animus on the part of the Defendant.  The fact that they somehow favored Lurz "would work to the detriment of all applicants for the job, [black and white, young and old] alike". *Blue v. United States Dep't of Army*, 914 F.2d 525, 541 (4th Cir. 1990)(evidence that employer impermissibly preselected applicant was not discriminatory).  Even assuming that the Defendant favored Lurz, this alone does not prove discrimination.  Title VII does not ensure that the best will be selected--only that the selection process will

be free from impermissible discrimination." *Blue,* 914 F.2d at 541 *(citing Casillas v. United States Navy*, 735 F.2d 338, 344 (9th Cir. 1984).

       (ii) Vacancy 772

       Plaintiff's discrimination claim regarding Vacancy 772 similarly fails, because she cannot rebut SSA's nondiscriminatory reason for selecting Smith. SSA contends that similar to the interview process for Vacancy 708, Palmer's interview performance was unimpressive. *See* Def. Mot. Summ. J. Exh. 9 at 112 and 172. Smith, however, left a favorable impression by looking at the questions posed within the context of the "big picture" and showing that he was very connected with the organization. *See id.* at 114. Similar to Lurz, Smith gained labor relations experience in the OCO. *See id.* at 173.   He is highly competent in labor relations, articulate and produced well-written  work product and assumed a lead Labor Relations OCO position. *See id.* at 172-173, 254-255.

       Palmer simply counters SSA's non-discriminatory reasons by stating that she was more qualified than Smith. *See* Plain. Opp. at p. 19.  Palmer's unsupported assertion that she was more qualified for the 772 position cannot create a genuine dispute of material fact. *See Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 526 (4th Cir. 2003) ("unsupported speculation is not sufficient to defeat a summary judgment motion").

       As Plaintiff's discrimination claim fails, her

retaliation claim also fails. *See Laber v. Rumsfeld*, Civ. No. 03-170-A, 2003 U.S. Dist. LEXIS 25929, at *16 (E.D.Va. Oct. 8, 2003), aff'd, 96 Fed. Appx. 925 (4th Cir. 2004)(if, in failure to promote claim, a plaintiff cannot prove that she was the best candidate, then plaintiff cannot show that her previous EEOC activities were the cause of defendant's failure to promote her). Accordingly, summary judgment is appropriate.

(B)  Reduction in Work-Retaliation

Plaintiff also claims that in retaliation for her EEOC activities, her workload was reduced.  Unless a plaintiff can prove that a change in duties damaged her career, a transfer in duties, not resulting in a decrease in salary, benefits, or rank, cannot constitute an adverse employment action.  *Boone v. Goldin*, 178 F.3d 253, 256-57 (4th Cir. 1999); *Brown v. Cox Med. Ctrs.*, 286 F.3d 1040, 1045-46 (8TH Cir. 2001).  As the Plaintiff has offered no evidence of the reduction's impact on her career, this claim fails.

### III. CONCLUSION

For the reasons discussed above, SSA's motion for summary judgment will be granted.

Date: <u>August 25, 2005</u>               _____/s/_____
                                          William D. Quarles, Jr.
                                          United States District Judge